United States District Court
Southern District of Texas

**ENTERED**

October 19, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROMAN VAZQUEZ BARRERA, *et al*, | § | |
| | § | |
| Petitioners, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-1241 |
| | § | |
| CHAD WOLF, *et al*, | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are the Requests for Release on Bail of Plaintiff-Intervenors ("Plaintiffs") Alhamawi, Rodriguez Garcia, and Casco-George. (Docs. 148, 151, 160). After considering the parties' briefs, the Court determines that the requests by Plaintiffs Rodriguez Garcia and Casco-George should be **GRANTED**, but the request by Plaintiff Alhamawi should be **DENIED**. The Court addresses each Plaintiff's request, in accordance with the legal standards and criteria set out in this Court's previous order. (Doc. 161).[1]

### I.    Plaintiff Abdullah Alhamawi (Doc. 148)

Alhamawi contends that he should be released for five reasons. First, he is "at serious risk of severe illness or death" from COVID-19 because of his medical history, including cancer, a bone marrow transplant, a history of seizures, chronic acid reflux, chronic heartburn, scoliosis, arthritis, nerve damage, and bulging discs. (Doc. 148 at 2-4). Second, he has a strong incentive to remain in Houston and abide by laws and conditions of release as he pursues his I-130 visa petition filed by his wife. (*Id.* at 5). Third, he does not pose a danger to the community because his criminal

---

[1] On October 14, Plaintiffs filed a Notice and Withdrawal of Request for Release informing the Court that Plaintiff Piñon Rocha was removed to Mexico. (Doc. 164). The Court therefore finds Plaintiff Piñon Rocha's request denied as moot.

history is limited to three misdemeanor convictions for driving under the influence—stemming from a struggle with substance abuse that arose after his sister's death. (*Id.* at 5). Fourth, his wife (a medical assistant), mother, and mother-in-law would provide him with financial support and housing upon release. (*Id.* at 5-6). Fifth, Houston has been his and his family's home since he was fifteen, and he has established long-term connections to the community including his wife, stepchildren, and his education towards a civil engineering degree. (*Id.* at 6-7).

The Government responds that Alhamawi should not be released for four reasons. First, Alhamawi's medical conditions are not recognized by the CDC as proper risk factors, are not sufficiently substantiated by Alhamawi while he has been in detention, and he has already recovered from a prior COVID-19 infection. (Doc. 152 at 19-20). Second, Alhamawi is a "danger to society" because of his convictions for driving under the influence, possession of marijuana, and giving false information, as well as violations while under supervision. (*Id.* at 21-22). Third, the Government argues that Alhamawi is properly detained under § 1226(a) and was denied bond by an immigration judge. (*Id.* at 22). Fourth, the Government argues that Alhamawi is a flight risk because his visa petition is likely to be denied. (*Id.* at 22-23).

The Court will deny Alhamawi's request for release for the following reasons:

- **Age**. As this Court previously noted, age is a critical factor because of both potential risk factors for COVID-19 and recidivism considerations. (Doc. 161 at 5). Alhamawi is thirty years old and thus his age alone does not place him in the higher risk levels for COVID-19, although he does face a higher risk than an individual under 30.[2] In addition, individuals

---

[2] *See CDC updates, expands list of people at risk of severe COVID-19 illness*, Center for Disease Control and Prevention, https://www.cdc.gov/media/releases/2020/p0625-update-expands-covid-19.html#:~:text=CDC%20now%20warns%20that%20among,severe%20illness%20from%20COVID%2D19.

between thirty and thirty-nine, a category which Alhamawi only barely falls in, are only slightly less likely to recidivate as compared to someone under thirty.[3] Therefore, Alhamawi's age weighs against release.

- **Medical History**. Medical conditions and past exposure to COVID-19 are also both highly significant to the Court's consideration. Alhamawi reports various medical conditions as described above. (Doc. 120-7 ¶ 4-11). The Court appreciates Dr. Averyt's conclusion, upon a review of Alhamawi's medical history, that he is at serious risk of complications from COVID-19. (Doc. 120-15 ¶ 20). On the other hand, CDC guidance leads to the conclusion that his conditions—although serious—are not currently recognized as risk factors for COVID-19. In addition, Alhamawi has already had COVID-19 and recovered. (Doc. 152-3 ¶ 12). Current CDC guidance continues to indicate that reinfection is possible but relatively unlikely.[4] Alhamawi's medical history thus does not weigh strongly in either direction.

- **Criminal History**. Criminal history is another important factor. The Court understands the Government's concerns about Alhamawi's criminal record and violations while under supervision. The Court also recognizes Alhamawi's struggle with substance abuse that seems to stem from the traumatic loss of his sister. Alhamawi has shown positive rehabilitation and appears to have a strong support system in his family, however the Court cannot take lightly the nature and recent time period of his convictions and arrest. For those reasons, this factor weighs against release.

---

[3] UNITED STATES SENTENCING COMMISSION, *THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS* 21 (2017).
[4] *Duration of Isolation and Precautions for Adults with COVID-19*, Center for Disease Control and Prevention (last updated Sept. 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html.

- **Flight Risk**. The Court believes Alhamawi has relatively strong incentives to comply with conditions of release. Houston is essentially Alhamawi's only home—having immigrated here from Saudi Arabia on a diplomatic visa at fifteen. He has strong ties to the community and a considerable support base in his mother, wife, and four stepchildren. He also has an I-130 visa petition which remains pending. Even if the petition is ultimately denied as the Government alleges is "likely" (Doc. 152 at 23), Alhamawi's strong ties to the United States bolster his commitment to appeal any future denial. The Court is not convinced by the Government's argument that his prior violations of court supervision suggest a flight risk, as they appear to stem from either substance abuse or poverty and are not flight related. Thus, this factor weighs in favor of release.

Despite the fact that Alhamawi does not present a flight risk, his age, medical history, and criminal history leave this Court with no present option but to deny Alhamawi's Request for Release.

## II.    Plaintiff Jose Rodriguez Garcia (Doc. 151)

Rodriguez Garcia argues that he should be released for five reasons. First, he is "at serious risk of severe illness or death" from COVID-19 because of his diabetes and heart disease. (Doc. 151 at 2-3). Second, he has a favorable immigration history, including thirty-seven years as a legal permanent resident and a case pending on appeal before the Board of Immigration Appeals ("BIA"). (*Id.* at 5). Third, his criminal history is limited to a single misdemeanor in which he picked up a gun for a friend. (*Id.* at 5-6). Fourth, he has a plan for stable housing and quarantine with his wife and the 14-year-old grandson of whom they have custody. (*Id.* at 6). Fifth, he points to his extensive family network in the United States and the fact that his wife relies upon him for care. (*Id.* at 7).

The Government responds with four arguments. First, the Government argues that Rodriguez Garcia's medical conditions are vitiated by the fact that he has already contracted COVID-19 and he admits he does not typically wear a mask.[5] (Doc. 154 at 19-20). Second, the Government argues that Rodriguez Garcia is a "danger to society" because Rodriguez Garcia attempted to smuggle firearms to Mexico. (*Id.* at 20-21). Third, the Government argues that Rodriguez Garcia is properly detained as an arriving alien. (*Id.* at 21). Fourth, the Government argues that Rodriguez Garcia is a flight risk because he has a pending order of removal. (*Id.* at 22).

The Court will grant Rodriguez Garcia's request for release for the following reasons:

- **Age.** As noted in the Court's previous Order, advanced age cuts in favor of release both because it raises the risk for severe illness for those infected by COVID-19 and because it lowers the risk that an offender will recidivate. (Doc. 161 at 5). At fifty-eight, Rodriguez Garcia is at a significantly increased risk for complications from COVID-19. Additionally, while Rodriguez Garcia is old enough that he is statistically unlikely to recidivate, that empirical figure is undermined by his recent conviction.[6] Therefore, Rodriguez Garcia's age cuts only slightly in his favor.

- **Medical History.** Here, medical conditions and past exposure to COVID-19 weigh in opposite directions. Rodriguez Garcia's diabetes, and possibly his heart condition, put him at high risk for COVID-19 complications. (Doc. 154-3 ¶ 7). Rodriguez Garcia has,

---

[5] Rodriguez Garcia's cited declaration states, "we do not wear masks inside the dorm, but there are some people who do. No MPC staff member has told me to wear my mask either when I was in quarantine or now." (Doc. 120-8 ¶ 19). Rodriguez Garcia's declaration dates back to July 22, 2020, at a time where Plaintiffs also alleged that Defendants had not provided guidance to detainees on proper mask practices. Thus, this does not compel the conclusion that Rodriguez Garcia is not concerned about his health nor undermine his medical conditions.

[6] UNITED STATES SENTENCING COMMISSION, *THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS* 21 (2017).

however, already had COVID-19 and has since been medically cleared. (Doc. 154-3 ¶ 6). For the reasons previously stated by this Court, the sum total of Rodriguez Garcia's medical history therefore does not cut strongly in either direction. (*See* Doc. 161 at 5).

- **Criminal History.** Criminal history is relevant to Rodriguez Garcia's propensity to commit a crime upon his release. Rodriguez Garcia's criminal record is limited to a single offense from earlier this year. The Government does not dispute that Rodriguez Garcia was a law-abiding legal permanent resident for nearly four decades prior to his conviction. Moreover, Rodriguez Garcia's conviction did not involve violent or threatening conduct, but merely the acquisition of a firearm. Thus, Rodriguez Garcia's criminal history weighs in favor of his release.

- **Flight Risk.** Finally, the Court will consider Rodriguez Garcia's risk of flight. The Court believes that Rodriguez Garcia has good reasons to comply with conditions of release. He must take care of his wife and grandson, he has an extended family in Texas, and his immigration case remains pending on appeal. Given that Rodriguez Garcia's immigration case is ongoing before the BIA, the Court is unpersuaded by the Government's contention that the existence of a removal order inherently increases Rodriguez Garcia's flight risk. In any case, Rodriguez Garcia's strong family support and community ties outweigh any such increased risk. Therefore, this factor weighs in Rodriguez Garcia's favor.

For those reasons—low flight risk, scant criminal history, somewhat advanced age, and relatively neutral medical history—the Court will grant Rodriguez Garcia's Request for Release.

## III.   Plaintiff Maria Casco-George (Doc. 160)

Casco-George argues that she should be released for five reasons. First, she has medical conditions that "place her at an increased risk of severe harm or death" from COVID-19 including

6

diabetes, high blood pressure, high cholesterol, asthma, and gastritis. (Doc. 160 at 2-4). Second, she has strong incentive to abide by laws and court orders as she continues to fight for asylum by appealing her denial to the BIA. (*Id.* at 5-6). Third, she does not pose a danger to the community because she has no convictions, only pending charges for fleeing a police officer and burglary—a charge "she emphatically denies" and appears to stem from a domestic dispute with her allegedly abusive husband. (*Id.* at 6). Fourth, her daughter-in-law, a United States citizen, will provide financial and housing support upon her release. (*Id.* at 8). Fifth, Casco-George is an asylum-seeker fleeing threats against her and her daughters (ages eleven and seventeen), who has supported them up until her detention and has demonstrated model detainee conduct while in detention at MPC. (*Id.*).

The Government responds in turn that Casco-George should not be released for three reasons. First, although conceding that she has various medical conditions placing her at risk for complications from COVID-19 which require ongoing treatment, the Government also argues her other conditions are "irrelevant" and that she admits detainees only wear their masks when they leave their dorm.[7] (Doc. 163 at 3-4). Second, she is a "danger to society and flight risk" because she has been arrested twice during the fourteen months she has been in the United States and not in custody. (*Id.* at 21-22). Third, the Government argues that Casco-George is properly detained under § 1226(a) and was denied bond by an immigration judge. (*Id.* at 6).

---

[7] Casco-George's declaration states, "we only wear the masks when we leave our dorm to go to the medic or to make phone calls. We are not required to use masks in our dorms . . . No MPC staff member has told me how to wear a mask or how to protect myself from COVID-19." (Doc. 120-11 ¶ 15, 17). As with Rodriguez Garcia, this declaration is dated July 22, 2020 and, taken in context, alleges a lack of guidance to detainees on proper mask practices. The Court does not find that these statements vitiate Casco-George's compromised medical condition, which the Government admits place her at heightened risk from COVID-19 complications.

- **Age**. At forty-four, Casco-George's age does not in and of itself place her in the highest risk levels for COVID-19, although she does face a higher risk than an individual in his or her thirties or forties.  Similarly, the United States Sentencing Commission has found that individuals between the ages of forty and forty-nine years are slightly but not overwhelmingly statistically less likely to recidivate.[8] As such, Casco-George is only slightly less likely to recidivate, though this is bolstered by the fact that the Court is not aware of any prior convictions. Thus, her age weighs in favor of release.

- **Medical History**. Casco-George's diabetes, asthma, obesity, and high blood pressure present significant risks of severe harm if she were to become infected with COVID-19. There is also no indication that she has yet had COVID-19, which is particularly meaningful in light of Defendants' significant intake of new detainees. (Doc. 163-1 ¶ 4). It appears that between September 27 and October 9, 2020, MPC has accepted approximately sixty-eight new detainees. (*Id.*; Doc. 154-2 ¶ 5). At this rate, the Court finds it unlikely that new detainees are housed individually, and more likely that all are being cohorted in groups of eight as Defendant Tate indicated. (Doc. 163-1 ¶ 8). This practice suggests cohorting of individuals with suspected or unconfirmed COVID-19 infections. It also appears new detainees are only being tested once upon arrival. (*Id.* ¶ 9). This limited testing combined with cohorting increases the risk of another outbreak in general population. The Government reports eight current cases among new detainees. (*Id.* ¶ 10). The intake conditions described render it highly possible that there will be more persons with an unidentified, active infection being released into general population. Therefore, this factor

---

[8] UNITED STATES SENTENCING COMMISSION, *THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS* 21 (2017).

weighs heavily in favor of release from detention to a place where she can safely isolate herself.

- **Criminal History**. Casco-George does not have any criminal convictions, although she has two pending cases. She has one case pending for failing to stop for a police officer. Particularly given her immigration status and recent arrival to the United States, this Court finds no nexus between that alleged conduct and any danger to the community or flight risk. Her second pending case appears to stem from a domestic dispute with her allegedly abusive partner. The parties strenuously dispute the facts of the event leading to her arrest and indictment. Given that that she has not been convicted of any offense, much less a felonious or violent one, Casco-George's constitutional right to the presumption of innocence compels this Court to give minimal weight to the allegations. Moreover, even if the accusations were taken as true, they are not sufficiently violent such that she would pose a risk to the larger community. For these reasons, her minimal criminal history weighs in favor of release.

- **Flight Risk**. Casco-George has not had the opportunity to build strong ties to the community, but she has a strong incentive to remain in the United States in order to appeal her immigration case and seek safety for her daughters and herself. Similar to Rodriguez, the Court is unpersuaded by the argument that her removal order makes her inherently likely to flee when she is also pursuing an appeal before the BIA and benefits from the support of her daughter-in-law and family friends. Thus, the Court finds that Casco-George has good reasons to comply with conditions of release and does not pose a high risk of flight.

Based on her heightened medical risk, her criminal record limited to allegations, and reduced flight risk, the Court will grant Casco-George's release.

The Court further orders all Plaintiffs to remain in Houston, respond promptly to any contact by U.S. Customs and Border Protection, and not commit any new crimes. This order shall become effective upon issuance.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 19th day of October, 2020.

KEITH P. ELLISON

UNITED STATES DISTRICT JUDGE